Titone, J.
(concurring). Citing the maxim that wherever possible statutes should be construed so as to sustain their constitutionality (see, e.g., Matter of Sarah K., 66 NY2d 223, cert denied sub nom. Kosher v Stamatis, 475 US 1108; Loretto v Teleprompter Manhattan CATV Corp., 58 NY2d 143), the Court bypasses appellants’ equal protection argument by holding that Penal Law § 245.01 simply does not apply "in these circumstances.” That maxim is unhelpful here, however, since both the language and the history of Penal Law § 245.01 demonstrate quite clearly that the conduct with which appellants were charged is precisely the type of behavior that the Legislature intended to outlaw when it enacted Penal Law § 245.01. Thus, appellants’ constitutional equal protection claim cannot be avoided and the only relevant legal maxim is the one that demands proof by the State that a classification *878 based on gender be substantially related to the achievement of an important governmental objective (e.g., Caban v Mohammed, 441 US 380, 388, 393; People v Liberta, 64 NY2d 152, 168). Since that standard has not been satisfied here, I would hold that, as applied in these circumstances, Penal Law § 245.01 is unconstitutional and, for that reason, the charges against appellants should have been dismissed.
Appellants and the five other women who were arrested with them were prosecuted for doing something that would have been permissible, or at least not punishable under the penal laws, if they had been men — they removed their tops in a public park, exposing their breasts in a manner that all agree was neither lewd nor intended to annoy or harass. As a result of this conduct, which was apparently part of an effort to dramatize their opposition to the law, appellants were prosecuted under Penal Law § 245.01, which provides that a person is guilty of the petty offense of "exposure” when he or she "appears in a public place in such a manner that the private or intimate parts of his [or her] body are unclothed or exposed.” The statute goes on to state that, for purposes of this prohibition, "the private or intimate parts of a female person shall include that portion of the breast which is below the top of the areola.”[1] The statute thus creates a clear gender-based classification, triggering scrutiny under equal protection principles (see, Craig v Boren, 429 US 190).
The majority has attempted to short-circuit this equal protection inquiry by holding that Penal Law § 245.01 is inapplicable to these facts. However, apart from a cryptic reference to People v Price (33 NY2d 831), which the majority admits involved a different statute and rationale, no explanation is offered as to why this facially applicable statute should not be applied here or what specific factor differentiates these circumstances from those in which the statute was intended to apply.
Price is inapt in this context because it involved the predecessor to the current Penal Law § 245.01 (L 1967, ch 367, § 1, amended by L 1970, ch 40, § 1, repealed by L 1983, ch 216, § 1), which was entitled "exposure of a female” and, as the majority acknowledges, "was aimed at discouraging 'topless’ waitresses and their promoters” (People v Price, supra, at 832; *879 see, Donnino, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law § 245.01, at 299-300). Given that purpose, it made sense for the Court to hold in Price that the statute "should not be applied to the noncommercial, perhaps accidental, and certainly not lewd, exposure alleged” in that case (33 NY2d, at 832).[2]
In contrast, the current version of Penal Law § 245.01, which was adopted in 1983 to replace the statute at issue in Price (L 1983, ch 216, § 1), was specifically intended to expand the reach of the "public exposure” prohibition. The new provision was aimed at filling a gap resulting from the fact that the existing law prohibited women from appearing topless in public but contained no prohibition against either men or women appearing bottomless in public places (Governor’s Approval Mem, L 1983, ch 216, 1983 McKinney’s Session Laws of NY, at 2756). The explicit purpose of the new law was to protect parents and children who use the public beaches and parks "from the discomfort caused by unwelcome public nudity” (id.; accord, Sponsors’ Mem re: Assembly Bill A5638, Bill Jacket, L 1983, ch 216; Letter dated May 31, 1983 from Assembly Member G. E. Lipschutz to Governor Cuomo re: Assembly Bill A5638, id.). Simply put, the focus of the legislation was to proscribe nude sunbathing by ordinary citizens (see, People v Hollman, 68 NY2d 202). It thus cannot seriously be argued that the present version of Penal Law § 245.01 was intended to be limited, as its predecessor may have been, to commercially motivated conduct.
Nor can it be argued that Penal Law § 245.01 was intended to be confined to conduct that is lewd or intentionally annoying. First, there is absolutely no support in the legislative history for such a construction. Second, a construction of Penal Law § 245.01 requiring lewdness would be of highly questionable validity, since it would render Penal Law § 245.00 (prohibiting the exposure of "intimate parts” "in a lewd manner”) redundant (see, McKinney’s Cons Laws of NY, Book 1, Statutes § 98 [a] ["(a)ll parts of a statute must be harmonized * * * and effect and meaning must * * * be given *880 to the entire statute”]). Finally, whatever the Court may have said about the limitations of the predecessor provision (see, People v Price, supra), this Court has already applied the current version of Penal Law § 245.01 to the public exposure of a person’s "intimate parts,” even where the conduct was merely an expression of a personal philosophy or a simple effort to "enhance * * * comfort [or] acquire an even tan” (People v Hollman, supra, at 206). Our analysis in People v Hollman (supra), thus plainly belies the limiting construction the majority now seems to adopt.
Accordingly, there is simply no sound basis for construing Penal Law § 245.01 so as to be inapplicable to the deliberate, nonaccidental conduct with which appellants were charged. The Court’s reliance on the "presumption of constitutionality” in these circumstances is thus nothing more than an artful means of avoiding a confrontation with an important constitutional problem. While it is true that statutes should be construed so as to avoid a finding of unconstitutionality if possible (McKinney’s Cons Laws of NY, Book 1, Statutes § 150 [c], at 321), courts should not reach for strained constructions or adopt constructions that are patently inconsistent with the legislation’s core purpose (see, People v Dietze, 75 NY2d 47, 52-53; cf., People v Mancuso, 255 NY 463, 474). In doing so here, the majority has gone well beyond the limits of statutory construction and has, in effect, rewritten a statute so that it no longer applies to precisely the conduct that the Legislature intended to outlaw.
The equal protection analysis that the majority has attempted to avoid is certainly not a complex or difficult one. When a statute explicitly establishes a classification based on gender, as Penal Law § 245.01 unquestionably does, the State has the burden of showing that the classification is substantially related to the achievement of an important governmental objective (e.g., Caban v Mohammed, supra, at 388; Craig v Boren, supra, at 197; People v Liberta, supra, at 168). The analysis may have been made somewhat more difficult in this case because of the People’s failure to offer any rationale whatsoever for the gender-based distinction in Penal Law § 245.01. Nonetheless, even in the absence of any discussion by the People, the objective to be achieved by the challenged classification can be readily identified.
It is clear from the statute’s legislative history, as well as our own case law and common sense, that the governmental objective to be served by Penal Law § 245.01 is to protect the *881 sensibilities of those who wish to use the public beaches and parks in this State (People v Hollman, supra, at 207; see, Governor’s Approval Mem, L 1983, ch 216, 1983 McKinney’s Session Laws of NY, at 2756; Sponsors’ Mem, id., Bill Jacket, L 1983, ch 216; Letter from Assembly Member G. E. Lipschutz to Governor Cuomo, id.). And, since the statute prohibits the public exposure of female — but not male — breasts, it betrays an underlying legislative assumption that the sight of a female’s uncovered breast in a public place is offensive to the average person in a way that the sight of a male’s uncovered breast is not. It is this assumption that lies at the root of the statute’s constitutional problem.
Although protecting public sensibilities is a generally legitimate goal for legislation (see, e.g., People v Hollman, supra), it is a tenuous basis for justifying a legislative classification that is based on gender, race or any other grouping that is associated with a history of social prejudice (see, Mississippi Univ. for Women v Hogan, 458 US 718, 725 ["(c)are must be taken in ascertaining whether the statutory objective itself reflects archaic and stereotypic notions”]). Indeed, the concept of "public sensibility” itself, when used in these contexts, may be nothing more than a reflection of commonly held preconceptions and biases. One of the most important purposes to be served by the Equal Protection Clause is to ensure that "public sensibilities” grounded in prejudice and unexamined stereotypes do not become enshrined as part of the official policy of government. Thus, where "public sensibilities” constitute the justification for a gender-based classification, the fundamental question is whether the particular "sensibility” to be protected is, in fact, a reflection of archaic prejudice or a manifestation of a legitimate government objective (cf., People v Whidden, 51 NY2d 457, 461).
Viewed against these principles, the gender-based provisions of Penal Law § 245.01 cannot, on this record, withstand scrutiny. Defendants contend that apart from entrenched cultural expectations, there is really no objective reason why the exposure of female breasts should be considered any more offensive than the exposure of the male counterparts. They offered proof that, from an anatomical standpoint, the female breast is no more or less a sexual organ than is the male equivalent (see, e.g., McCrary, Human Sexuality, at 141 [1973]). They further contend that to the extent that many in our society may regard the uncovered female breast with a prurient interest that is not similarly aroused by the male *882 equivalent (but see, Kinsey, Sexual Behavior in the Human Female, at 586-587 [1953]; Kinsey, Sexual Behavior in Human Male, at 575 [1948]; Wildman, Note on Males’ and Females’ Preference for Opposite-Sex Body Parts, 38 Psychological Reports 485-486), that perception cannot serve as a justification for differential treatment because it is itself a suspect cultural artifact rooted in centuries of prejudice and bias toward women. Indeed, there are many societies in other parts of the world — and even many locales within the United States— where the exposure of female breasts on beaches and in other recreational area is commonplace and is generally regarded as unremarkable.[3] It is notable that, other jurisdictions have taken the position that breasts are not "private parts” and that breast exposure is not indecent behavior (State v Parenteau, 55 Ohio Misc 2d 10, 11, 564 NE2d 505, citing State v Jones, 7 NC App 166, 171 SE2d 468; State v Moore, 194 Ore 232, 241 P2d 455; State v Crenshaw, 61 Haw 68, 597 P2d 13; see also, Duvallon v State, 404 So 2d 196 [Fla]), and 22 States specifically confine their statutory public exposure prohibitions to uncovered genitalia.[4]
The People in this case have not refuted this evidence or attempted to show the existence of evidence of their own to indicate that the nonlewd exposure of the female breast is in any way harmful to the public’s health or well-being. Nor have they offered any explanation as to why, the fundamental goal that Penal Law § 245.01 was enacted to advance — avoiding offense to citizens who use public beaches and parks— cannot be equally well served by other alternatives (see, Wengler v Druggists Mut. Ins. Co., 446 US 142, 151-152; Orr v Orr, 440 US 268, 281-283).
In summary, the People have offered nothing to justify a *883 law that discriminates against women by prohibiting them from removing their tops and exposing their bare chests in public as men are routinely permitted to do. The mere fact that the statute’s aim is the protection of “public sensibilities” is not sufficient to satisfy the State’s burden of showing an “ 'exceedingly persuasive justification’ ” for a classification that expressly discriminates on the basis of sex (see, Kirchberg v Feenstra, 450 US 455, 461). Accordingly, the gender-based classification established by Penal Law § 245.01 violates appellants’ equal protection rights and, for that reason, I concur in the majority’s result and vote to reverse the order below.
Chief Judge Wachtler and Judges Kaye, Hancock, Jr., and Bellacosa concur in memorandum; Judge Titone concurs in result in an opinion in which Judge Simons concurs.
Order reversed, etc.

. Public exposure of a female’s breast for the purposes of breastfeeding infants or "entertaining or performing in a play, exhibition, show or entertainment” is expressly excluded from the statutory prohibition.

. Significantly, the allegation in Price was that the defendant had been observed on a public street wearing a fishnet pullover which left portions of her breasts visible, prompting the Court to observe that, absent certain conditions, "legislation may not control the manner of dress” (33 NY2d, at 832). That consideration is obviously not relevant here, where appellants’ conduct was obviously intended as a political, rather than a fashion, statement.

. Interestingly, expert testimony at appellants’ trial suggested that the enforced concealment of women’s breasts reinforces cultural obsession with them, contributes toward unhealthy attitudes about breasts by both sexes and even discourages women from breastfeeding their children.

. See, Alaska Stat § 11.41.460; Cal Penal Code Annot § 314; Col Rev Stat § 18-7-302; Idaho Code § 18-4104; Iowa Code Annot § 709.9; Kan Stat Annot § 21-4301; Ky Rev Stat Annot § 510.150; Me Rev Stat Annot, tit 17-A, § 854; Mo Rev Stat § 566.130; Mont Code Annot § 45-5-504; Neb Rev Stat § 28-806; NH Rev Stat Annot § 645:1; ND Century Code § 12.1-20-12.1; NM Stat Annot § 30-9-14; Okla Stat, tit 21, § 1021; Ore Rev Stat Annot § 163.465; RI Gen Laws § 11-45-1; SD Codified Laws § 22-24-1; Tenn Code Annot § 39-13-511; Tex Penal Code Annot § 21.08; Utah Code Ann § 76-9-702; Wis Stat Annot § 944.20; see also, Robins v Los Angeles County, 248 Cal App 2d 1, 56 Cal Rptr 853.