**Gary SMITH, Appellant (Defendant/Appellant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff/Appellee).**

No. 85–202.

Supreme Court of Wyoming.

Feb. 27, 1986.

Leonard Munker, State Public Defender, Julie Naylor, Appellate Counsel, Wyoming Public Defender Program and Gerald M. Gallivan, Director, and Kate L. Mead, Student Intern, Wyoming Defender Aid Program, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen., and J.C. DeMers, Asst. Atty. Gen., for appellee.

Before THOMAS, C.J., and BROWN, CARDINE, URBIGKIT and MACY, JJ.

MACY, Justice.

Appellant was convicted by a jury of committing an indecent act in the presence of a child under § 6–4–403(b)(iii), W.S.1977 (June 1983 Replacement). The only issue raised on appeal is whether the trial court abused its discretion in allowing the five-year-old victim to testify.

We affirm.

On March 24, 1984, appellant's wife was babysitting a four-year-old girl. Sometime during the day, the child wandered into a shed on appellant's property in Rock Springs, Wyoming, where he was working, and he engaged her in a conversation. At some point during the conversation, appellant pulled down his pants and masturbated in front of the child. That night, the child told her mother what had happened. Charges were brought against appellant on May 3, 1984. Appellant pled not guilty, and the case was set for trial before a jury. On the morning of the trial, a hearing was held to determine whether the child was competent to testify. At the conclusion of the hearing, the trial court found that the child was competent to testify. On January 14, 1985, the jury rendered its verdict finding appellant guilty of the offense charged. He was subsequently sentenced to a term of 365 days in the Sweetwater County jail. On March 20, 1985, appellant appealed to the District Court, Third Judicial District. An order denying the appeal was entered on August 22, 1985.

Appellant contends that the trial court abused its discretion by allowing the child to testify in that the trial court failed to establish her competency as a witness. We previously adopted the following test for determining the competency of a young child as a witness:

" '(1) an understanding of the obligation to speak the truth on the witness stand; (2) the mental capacity at the time of the occurrence concerning which he is to testify, to receive an accurate impression of

it; (3) a memory sufficient to retain an independent recollection of the occurrence; (4) the capacity to express in words his memory of the occurrence; and (5) the capacity to understand simple questions about it.' [Citations.]" *Larsen v. State*, Wyo., 686 P.2d 583, 585 (1984).

In the present case, the following discourse took place between the trial court and the child at the competency hearing:

"THE COURT: Okay. How old are you?

"[VICTIM]: Five.

"THE COURT: Do you go to school, yet?

"[VICTIM]: Yes.

"THE COURT: Which school?

"[VICTIM]: Yellowstone.

"THE COURT: Yellowstone. Is that out by the fairgrounds?

"[VICTIM]: No.

"THE COURT: It's not. Do you ever go to the fair?

"[VICTIM]: No.

"THE COURT: No, you don't, okay. Is— your daddy's here, is that right?

"[VICTIM]: Yes.

"THE COURT: Does he work?

"[VICTIM]: Yes.

"THE COURT: Do you know what he does?

"[VICTIM]: Yes.

"THE COURT: What does he do?

"[VICTIM]: Makes money.

"THE COURT: He makes money. Lots of money?

"[VICTIM]: Yes.

"THE COURT: Okay. Do you have any brothers or sisters?

"[VICTIM]: Yes.

"THE COURT: Brothers?

"[VICTIM]: Yes.

"THE COURT: Older than you?

"[VICTIM]: No.

"THE COURT: Younger than you?

"[VICTIM]: Yes.

"THE COURT: Okay. How many brothers do you have?

"[VICTIM]: Two.

"THE COURT: What's one of your brothers name?

"[VICTIM]: Colby.

"THE COURT: How old is Colby?

"[VICTIM]: Three.

"THE COURT: Now, [victim], this is Miss Kearns. You've met her before?

"[VICTIM]: Yes.

"THE COURT: Okay. That's Mr. Pickett and that's Mr. McKinney, and they're lawyers. Do you know what a lawyer is?

"[VICTIM]: No.

"THE COURT: Okay. Now, do you know why you're here today in court?

"[VICTIM]: Yes.

"THE COURT: Can you tell me why?

"[VICTIM]: Because someone did something bad.

"THE COURT: And what do you have to do?

"[VICTIM]: I have to tell these people about it.

"THE COURT: Okay. Do you remember it?

"[VICTIM]: Yes.

"THE COURT: All right. Do you go to church?

"[VICTIM]: Yes.

"THE COURT: Sunday school?

"[VICTIM]: No.

"THE COURT: No. Church, but not Sunday school?

"[VICTIM]: Yes.

"THE COURT: Okay. [Victim], do you know the difference between telling a lie and telling the truth?

"[VICTIM]: Yes.

"THE COURT: Can you tell me what—can you give me an example of telling a lie?

"[VICTIM]: Yes. If somebody says there was an elephant up in the sky, I would look up into the sky, and say you're lying.

"THE COURT: Because why?

"[VICTIM]: It would be a lie.

"THE COURT: That would be a lie?

"[VICTIM]: Yes.

"THE COURT: Because the elephant couldn't be there; is that right?

"[VICTIM]: Yes.

"THE COURT: Okay. Now, what happens when you tell lies?

"[VICTIM]: You get a spanking.

"THE COURT: You get a spanking?

"[VICTIM]: Yes.

"THE COURT: Why do you get a spanking when you tell a lie?

"[VICTIM]: Because—because—because he really did it and so when he said you did it.

\*    \*    \*    \*    \*    \*

"THE COURT: Okay. Where do you live? Can you tell me? Do you know your address at home?

"[VICTIM]: Yes. Space number corral five.

"THE COURT: Space number—

"[VICTIM]: Corral five.

"THE COURT: Corral, Mobile Stall five?

"[VICTIM]: Yes.

"THE COURT: Okay. Is that on the way to Green River?

"[VICTIM]: No. It's right by the horses.

"THE COURT: Right by the horses. Now, did you—do you like pets?

"[VICTIM]: Yes.

"THE COURT: Do you have a pet?

"[VICTIM]: I had one once.

"THE COURT: What kind of a pet was it?

"[VICTIM]: It was a dog, a real one.

"THE COURT: A real one?

"[VICTIM]: Yes.

"THE COURT: What color?

"[VICTIM]: It was brown.

"THE COURT: Brown and what?

"[VICTIM]: It was brown and it didn't have any white spots and it was just brown.

"THE COURT: Just brown, okay.

"[VICTIM]: But we do have another pet, it's a guinea pig and he's all black.

"THE COURT: It's a guinea pig?

"[VICTIM]: And he's all black.

"THE COURT: Does that mean a little guinea pig?

"[VICTIM]: Oh, it's just a guinea pig.

"THE COURT: Oh, just a guinea pig, okay. I'm not familiar with guinea pigs then. You told me that you remembered what happened?

"[VICTIM]: Yes, I did.

"THE COURT: Can you tell me what happened?

"[VICTIM]: Yes.

"THE COURT: Go ahead.

"[VICTIM]: This man, he was in the garage, and I wanted to go in there, too.

"THE COURT: You wanted to—and this man was in the garage and you wanted to go in there, too?

"[VICTIM]: Yes.

"THE COURT: Did you go in there?

"[VICTIM]: Yes, I did.

"THE COURT: And what happened then?

"[VICTIM]: I told the man that I never had a pet friend that was—that wasn't when I had—

"THE COURT: You told the man you never had a pet friend?

"[VICTIM]: Yes.

"THE COURT: Did the man say anything?

"[VICTIM]: Yes.

"THE COURT: What did he say?

"[VICTIM]: He said he had a pet friend.

"THE COURT: He said he had a pet friend?

"[VICTIM]: Yes.

"THE COURT: Did he say where the pet friend was?

"[VICTIM]: No, I said where the pet friend was.

"THE COURT: Oh, you asked him where the pet friend was. What did he say?

"[VICTIM]: He said it's under his leg and I said I don't see no doggy, so he pulled down his pants and I didn't look.

"THE COURT: He pulled down his pants, he said his pet was under his—

"[VICTIM]: Legs.

"THE COURT: Legs. And you said you didn't see any pet?

"[VICTIM]: Yes.

"THE COURT: And he pulled down his pants?

"[VICTIM]: Yes, and I didn't look.

"THE COURT: You didn't look?

"[VICTIM]: So, I opened my eyes and then he said we's going to see milk come out of his peter, and I thought it was gruesome.

"THE COURT: Okay. What happened after that? Do you remember?

"[VICTIM]: He told me not to tell—tell anybody, so I just left the room. So I just left the garage."

As evidenced by the excerpt quoted above, the child was examined by the trial judge. She was asked questions requiring her to demonstrate her knowledge and her memory. She was also asked questions requiring her to differentiate between telling the truth and telling a lie. Finally, the child was asked questions requiring her to demonstrate her ability to independently remember what occurred in the shed with appellant. Her testimony demonstrates that, despite her age, the child was bright and aware. She knew her age, where she lived, where she went to school, the age, names and sex of her siblings, and the type and color of pets she had owned. When asked if she knew the difference between the truth and a lie, she replied affirmatively and provided an example of a lie. Finally, she was able to recall what occurred and what was said in the shed.

As a reviewing court, we must assume the evidence of the successful party is true, leave out of consideration entirely evidence of the unsuccessful party in conflict therewith, and give to evidence of the successful party every favorable inference which may reasonably be drawn from it. *Landmark, Inc. v. Stockmen's Bank & Trust Company,* Wyo., 680 P.2d 471 (1984). Our duty is not to weigh the evidence but merely to determine whether the judgment is supported by substantial evidence. *Barnette v. Doyle,* Wyo., 622 P.2d 1349 (1981). We presume that the findings of the trial court are correct and will not disturb them unless they are clearly erroneous or contrary to the great weight of the evidence. *Seeley v. Estate of Seeley,* Wyo., 627 P.2d 1357 (1981).

In the present case, we cannot say the trial court's finding that the child was competent to testify was clearly erroneous or against the great weight of the evidence. Were we deciding this case at the trial level, we might decide it differently, but that is not sufficient grounds for overturning the trial court. *Doenz v. Garber,* Wyo., 665 P.2d 932 (1983). The trial court is in a far better position to judge the demeanor, truth and veracity of a witness; therefore, we give considerable deference to the court's findings regarding such witness. *State ex rel. Wyoming Worker's Compensation Division v. Colvin,* Wyo., 681 P.2d 269 (1984). In the present case, it is obvious that, having watched and listened to the child's testimony, the trial court was persuaded that she was competent to testify. We find no abuse of discretion.

Affirmed.